# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT ("**Agreement**"), dated the __ day of April, 2012, is between WILLIAM G. SCHWAB, ESQ. ("**Trustee**"), an individual acting solely in his capacity as the Chapter 7 trustee of the bankruptcy estate of Saint Catherine Hospital of Pennsylvania, LCC, a Delaware limited liability company ("**Debtor**"), and ST. LUKE'S PHYSICIAN GROUP, INC. ("**Buyer**"), a Pennsylvania not-for-profit corporation.

## BACKGROUND

A. Buyer is a non-profit corporation formed for the purpose of providing physician services to patients and professional and administrative services to St. Luke's Health Network, Inc. d/b/a St. Luke's University Health Network (the "**Network**") and its affiliated hospitals.

B. Debtor, through its wholly owned subsidiary, Saint Catherine Medical Group, LLC, a Delaware limited liability company (the "**Subsidiary**" and, together with Debtor, "**St. Catherine**"), has been engaged in the practice of Family Medicine (referred to as the "**Business**") at offices presently located at 411 Shenandoah Road, Ringtown, Pennsylvania 17976 (the "**Office**").

C. On April 9, 2012, Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Middle District of Pennsylvania to Docket No. 5:12-bk-02073-JJT (the "**Bankruptcy Case**" and the "**Bankruptcy Court**").

D. The Bankruptcy Case converted to Chapter 7, and the Trusteewas appointed as the Chapter 7 Trustee to administer the Debtor's estate.

E. Pursuant to the Bankruptcy Code, the Trustee now has legal title to and the sole authority to administer and sell Debtor's assets, including those of the Subsidiary, by operation of law pursuant to the Bankruptcy Code.

F. Subject to the approval of the Bankruptcy Court, Trustee desires to sell, and Buyer desires to purchase, certain assets of St. Catherine relating to the Business, upon the terms and conditions set forth in this Agreement.

G. This Agreement is entered into pursuant to, and shall be deemed to have been entered into contemporaneously with, the execution of: (a) the letter agreement, dated the date hereof (the "**Employment Agreement**"), between the Buyer and Gregory C. Dobash, M.D. (the "**Physician**"); and (b) the Lease Agreement, dated the date hereof (the "**Lease Agreement**"), between the Buyer and Northern Valley Medical Center, Inc., a Pennsylvania not-for-profit corporation (the "**Landlord**").

## TERMS

NOW, THEREFORE, in consideration of the foregoing representations and of the mutual covenants and promises made in this Agreement and for other valuable consideration (the receipt and sufficiency of which are hereby acknowledged), and with the intent to be legally bound hereby, the Trustee on behalf of the Debtor's Estate and the Buyer hereby agree as follows:

1

# ARTICLE I
# DEFINITIONS

1.1. <u>Definitions</u>. As used in this Agreement, the following terms shall have the meanings set forth below:

"**Accounts Receivable**" shall mean all of the Business's trade and other accounts receivable arising from the sale of goods or services prior to the Closing.

"**Affiliate**" shall mean, with respect to any Person, any other person directly or indirectly controlling, controlled by, or under common control with, such Person at any time during the period for which the determination of affiliation is being made.

"**Agreement**" shall mean this Agreement, as the same may be amended or supplemented from time to time in accordance with the terms hereof.

"**Cash Equivalents**" shall mean checks, money orders, marketable or other securities, short-term instruments and other cash equivalents, demand deposits or similar accounts, and any evidence of indebtedness issued or guaranteed by any Governmental Authority.

"**Closing**" shall mean the closing of the transactions contemplated by this Agreement.

"**GAAP**" shall mean generally accepted accounting principles and practices in effect in the United States of America from time to time.

"**Governmental Authority**" shall mean any supranational, national, federal, state or local judicial, legislative, executive or regulatory authority.

"**Know-How**" means any and all technical information of any kind and in any form whatsoever, including, without limitation, techniques, inventions, practices, methods, knowledge, know-how, skill, experience, test data, analytical and quality assurance and quality control data and information, data and descriptions, compositions and assays.

"**Laws**" shall include any federal, state, foreign or local law, statute, code, ordinance, rule, regulation, order, injunction, judgment or decree, including but not limited to any of the foregoing relating to zoning or building laws, the Occupational Safety and Health Act, the Americans with Disabilities Act, the Health Insurance Portability and Accountability Act of 1996, the Federal Anti-Kickback Statute or the Federal Ethics in Patient Referrals Act or laws, rules, regulations, orders or decrees otherwise enacted or enforced by the Center for Medicare and Medicaid Services, the Pennsylvania Department of Health, the Pennsylvania Department of Public Welfare or other similar Governmental Authority.

"**Liabilities**" shall mean any and all debts, liabilities and obligations, whether accrued or fixed, known or unknown, absolute or contingent, matured or unmatured or determined or determinable.

"**Lien**" shall mean any lien, charge, claim, pledge, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, security agreement, right of first refusal, option, restriction, license, covenant, or other encumbrance (including title defects of any kind whatsoever, or the filing of, or agreement to give any financing statement under the Uniform Commercial Code or Law of any jurisdiction).

"**Permitted Liens**" shall mean (i) such imperfections of title as do not materially adversely affect the value or impair the use of the property subject thereto, or (ii) materialmen's, carriers', warehousemen's or other like liens and security obligations that are not delinquent.

- 2 -

Case 5:12-bk-02073-JJT    Doc 52-1    Filed 04/27/12    Entered 04/27/12 17:33:54    Desc
Exhibit Asset Purchase Agreement    Page 2 of 20

"**Person**" shall mean an individual, sole proprietorship, joint venture, partnership, corporation, association, joint-stock company, unincorporated organization, cooperative, trust, estate, government (or any branch, subdivision or agency thereof), governmental, administrative or regulatory authority, or any other entity of any kind or nature whatsoever.

"**Proprietary Asset**" shall mean any: (i) patent (including any extension, reissue, reexamination or the like relating thereto), patent application (including any provisional, divisional, continuation or continuation-in-part), trademark (whether registered or unregistered), trademark application, trade name, fictitious business name, service mark (whether registered or unregistered), service mark application, copyright (whether registered or unregistered), copyright application, maskwork, maskwork application, trade secret, computer software, computer program, source code, algorithm, invention, proprietary product, technology, proprietary right or other intellectual property right or intangible asset; or (ii) the right to use or exploit any of the foregoing.

"**Tax**" or "**Taxes**" shall mean all taxes, duties or other similar assessments, including but not limited to, income, excise, property, sales, value added, profits, license, withholding (with respect to compensation or otherwise), payroll, employment, net worth, capital gains, transfer, stamp, social security, and franchise taxes, imposed by any Governmental Authority, and including any interest, penalties and additions attributable thereto.

"**Tax Return**" or "**Tax Returns**" shall mean any return, report, declaration, information return, statement or other document filed or required to be filed with any Governmental Authority, in connection with the determination, assessment or collection of any Tax or the administration of any Laws relating to any Tax.

## ARTICLE II
## PURCHASE OF ASSETS; ASSUMPTION OF LIABILITIES

2.1. <u>Purchase and Sale of Assets</u>. Subject to the terms and conditions of this Agreement, at the Closing, Trustee on behalf of the Debtor's Estate shall sell, convey, assign, transfer and deliver to Buyer (or one or more of its assignees), and Buyer shall purchase and acquire from Trustee, all ofDebtor's right, title and interest in and to the Acquired Assets (as defined below), free and clear of all Liens; <u>provided</u>, <u>however</u>, that if any Affiliate of St. Catherine has any right, title or interest in or to an Acquired Asset, Trustee shall cause such Debtor's Affiliate to convey all of such Affiliate's right, title and interest in and to such Acquired Asset to Buyer pursuant to the terms of this Agreement. For purposes of this Agreement, the "<u>Acquired Assets</u>" shall mean the following assets, properties and rights used in connection with the Business, but excluding the Excluded Assets:

(a) all machinery, equipment, goods, furnishings, tools, furniture, fixtures, office supplies and other supplies and other tangible personal property, whether located at the Office, in transit or otherwise;

(b) all inventory, whether located at the Office, in transit or otherwise;

(c) all work-in-progress, consisting of any course of treatment not yet completed prior to the Closing Date and for which the patient has not yet been billed;

(d) patient and supplier lists and sales and marketing materials;

(e) the Proprietary Assets used in connection with the Business, including the name "Ringtown Northern Valley Medical Center" and any derivations thereof used by the Business, all Know-How in every form whatsoever used or developed in connection with the Business, goodwill, licenses and sublicenses granted and obtained with respect thereto;

(f) the telephone numbers, the facsimile numbers and internet domain names for the Business;

- 3 -

(g) the oral and written contracts, agreements and other instruments set forth or described on Schedule 2.1(g) hereto (the "**Assigned Contracts**"); and

(h) all permits necessary for Buyer to possess, own and use the Acquired Assets

2.2. Nonassignment of Assets. Notwithstanding anything to the contrary set forth herein, to the extent that any sale, assignment, transfer, conveyance or delivery, or attempted sale, assignment, transfer, conveyance or delivery to Buyer of any asset that would be an Acquired Asset or any claim or right or any benefit arising thereunder or resulting therefrom is prohibited by any Law or would require any authorization, approval, consent or waiver by any Governmental Authority or Person, and such authorization, approval, consent or waiver shall not have been obtained prior to the Closing, the Closing shall proceed, subject to Article VI, without the sale, assignment, transfer, conveyance or delivery of such asset (and the failure to obtain such authorization, approval, consent or waiver and the failure to sell, assign, transfer, convey or deliver such assets shall not constitute a breach of this Agreement by Trustee), and this Agreement shall not constitute a sale, assignment, transfer, conveyance or delivery of such asset or an attempt thereof. In the event that the Closing proceeds without the sale, assignment, transfer, conveyance or delivery of any such asset, then following the Closing, the Parties shall use reasonable efforts and cooperate with each other to obtain promptly such authorizations, approvals, consents or waivers; provided, however, that Trustee shall not compromise any rights not otherwise required by this Agreement to be compromised for any such authorization, approval, consent or waiver. Pending such authorization, approval, consent or waiver, the Parties shall cooperate with each other in any mutually agreeable, reasonable and lawful arrangements designed to provide to Buyer the benefits of use of such asset, including any indemnities, that it would have obtained had the asset been conveyed to Buyer at the Closing. To the extent that Buyer is provided the benefits pursuant to this Section 2.2 of any Assigned Contract, Buyer shall perform for the benefit of the other Persons that are parties thereto the obligations of St. Catherine thereunder and pay, discharge and satisfy any related Liabilities that, but for the lack of an authorization, approval, consent or waiver to assign such Liabilities to Buyer, would be Assumed Liabilities. Once authorization, approval, consent or waiver for the sale, assignment, transfer, conveyance or delivery of any such asset not sold, assigned, transferred, conveyed or delivered at the Closing is obtained, Trustee shall sell, assign, transfer, convey or deliver such asset to Buyer at no additional cost to Buyer. To the extent that any such asset cannot be transferred or the full benefits of use of any such asset cannot be provided to Buyer following the Closing pursuant to this Section 2.2, then Trustee and Buyer shall enter into such arrangements to provide to the Parties the economic (taking into account Tax costs and benefits) and operational equivalent, to the extent permitted, of obtaining such authorization, approval, consent or waiver and the performance by Buyer of the obligations thereunder. Trustee shall pay to Buyer promptly upon receipt thereof, all income, proceeds and other monies received by Trustee in connection with his use of any asset (net of any Taxes and any other costs imposed upon Trustee) in connection with the arrangements under this Section 2.2.

2.3. Excluded Assets. Buyer shall not purchase hereunder, and Trustee shall not sell, convey, assign, transfer or deliver to Buyer hereunder, the cash, Cash Equivalents and Accounts Receivable of the Business as of the Closing Date (the "**Excluded Assets**").

2.4. Assumed Liabilities. Subject to the terms and conditions of this Agreement, at the Closing, Buyer shall assume and agree to pay, perform and discharge when due the following specific Liabilities and obligations of the Business (the "**Assumed Liabilities**"):

(a) all obligations to be performed after the Closing Date under the Assigned Contracts, except that Buyer shall not assume or agree to pay, discharge or perform any Liabilities arising out of any breach or default (including for this purpose any event which, with notice of time would constitute such a breach or default) by St. Catherine of any provision of any Assigned Contract; and

(b) all Liabilities arising out of or related to the use of the Acquired Assets solely to the extent the facts underlying such events first arise after the Closing Date.

- 4 -

Case 5:12-bk-02073-JJT    Doc 52-1    Filed 04/27/12    Entered 04/27/12 17:33:54    Desc
Exhibit Asset Purchase Agreement    Page 4 of 20

2.5. <u>Excluded Liabilities</u>. Notwithstanding anything to the contrary herein, Buyer shall not assume any Liabilities (contingent or absolute and whether or not determinable as of the Closing) of the Business, except for the Assumed Liabilities as specifically and expressly provided for above, whether such Liabilities relate to payment, performance or otherwise, and all Liabilities not expressly transferred to Buyer hereunder as Assumed Liabilities are being retained by the Debtor's Estate(the "**Excluded Liabilities**"), who shall remain liable therefor unconditionally and without right of set-off. For purposes of clarification, Buyer shall not assume hereunder any Liability for any act giving rise to professional liability that relates to events that occur prior to Closing. Trustee, on behalf of the Debtor's Estate, hereby irrevocably and unconditionally waives and releases Buyer and its Affiliates from all Excluded Liabilities, including any Liabilities created by Law.

2.6. <u>Prorations</u>. The parties agree that, irrespective of whether such Assumed Liabilities would be accrued and reserved for in accordance with GAAP, the following items shall be pro-rated as follows and be deemed Excluded Liabilities in amounts representing the period up to and including the Closing Date:

    (a)    electric, fuel, gas, telephone, sewer and utility charges;

    (b)    rentals and other charges under leases to be assumed by Buyer pursuant to Section 2.1; and

    (c)    charges under maintenance and service contracts and other Assigned Contracts.

## ARTICLE III
## CLOSING

3.1. <u>Closing</u>. Subject to the terms and conditions of this Agreement, the Closing shall take place on the date the conditions to Closing set forth in Article VI of this Agreement shall have been satisfied or waived (to the extent permissible), or the day after the Sale Order (as defined below) has been entered provided that it has not been stayed, at the offices of Buyer, or on such other date and at such other time or place as may be mutually agreed upon by the parties hereto (the "**Closing Date**").

3.2. <u>Deliveries and Proceedings at Closing</u>. Subject to the terms and conditions of this Agreement, at the Closing:

    (a)    <u>Deliveries to Trustee</u>. Buyer shall deliver to Trustee:

        (i)    a check in the amount of Ten Thousand Dollars ($10,000) (the "**Purchase Price**") made payable to the Trustee in his capacity as trustee in the aforementioned bankruptcy filing.

        (ii)    a Bill of Sale substantially in the form attached hereto as <u>Exhibit A</u> (the "**Bill of Sale**") executed by Buyer; and

        (iii)    an Assignment and Assumption Agreement substantially in the form attached hereto as <u>Exhibit B</u> (the "**Assignment and Assumption**") executed by Buyer.

    (b)    <u>Deliveries to Buyer</u>. Trustee will deliver to Buyer:

        (i)    the Bill of Sale executed by Trustee;

        (ii)    the Assignment and Assumption executed by Trustee;

        (iii)    electronically filed Sale Order and the Bankruptcy Court's docket dated as of the Closing Date; and

- 5 -

Case 5:12-bk-02073-JJT    Doc 52-1    Filed 04/27/12    Entered 04/27/12 17:33:54    Desc
Exhibit Asset Purchase Agreement    Page 5 of 20

(iv) all such other instruments of conveyance reasonably requested by Buyer as shall be necessary to vest in Buyer good, valid and marketable title to the Acquired Assets in accordance with Section 2.1 hereof.

## ARTICLE IV
## SELLER'S REPRESENTATIONS AND WARRANTIES

Trustee represents and warrants to Buyer as follows:

4.1. <u>Authorization and Enforceability</u>. Trustee, on behalf of the Debtor's Estate, is legally competent to, and Trustee has the absolute and unrestricted right, power and authority subject to prior bankruptcy court approval to make, execute, deliver and perform his obligations under this Agreement and the other transaction documents contemplated to be executed by him hereby on behalf of the Debtor's Estate (the "**Trustee Transaction Documents**"). This Agreement has been, and as of the Closing Date the Trustee Transaction Documents will be, duly executed and delivered by the Trustee subject to prior bankruptcy court approval of this Asset Purchase Agreement. This Agreement is a legal, valid and binding obligation of the Debtor's Estate, enforceable in accordance with its terms. As of the Closing Date, the Trustee Transaction Documents will be the legal, valid and binding obligations of the Debtor's Estate, enforceable in accordance with their respective terms.

4.2 <u>Title</u>. Trustee on behalf of the Debtor's Estate has and will convey to Buyer at Closing indefeasible, good and valid title to all of the Acquired Assets, subject only to the Permitted Liens.

4.3. <u>Contracts</u>. Schedule 2.1(g) hereto contains a list of each Assigned Contract. Other than the Assigned Contracts, there are no agreements relating to or binding the Business or its assets which have not been terminated or which will not be terminated immediately prior to the Closing.

Buyer acknowledges and agrees that, except as set forth in this Articles IV and VI, Trustee makes no representations or warranties regarding the Acquired Assets, including, without limitation, representations or warranties concerning the condition of the Acquired Assets, the applicability of any Laws, or the suitability of the Acquired Assets for any purpose whatsoever. Except as set forth in this Agreement, Buyer is acquiring the Acquired Assets "as is, where is" and "with all faults."

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Trustee as follows:

5.1. <u>Organization and Good Standing</u>. Buyer is a corporation validly existing and in good standing under the laws of the Commonwealth of Pennsylvania.

5.2. <u>Authorization and Enforceability</u>. Buyer has full corporate power and corporate authority to make, execute, deliver and perform this Agreement and the other transaction documents contemplated to be executed by it hereunder (the "**Buyer Transaction Documents**"). The execution, delivery and performance by Buyer of this Agreement and the Buyer Transaction Documents have been duly authorized by all necessary corporate action on the part of Buyer. This Agreement has been, and as of the Closing Date the other Buyer Transaction Documents will be, duly executed and delivered by Buyer. This Agreement is a legal, valid and binding obligation of Buyer, enforceable against it in accordance with its terms. As of the Closing Date, the Buyer Transaction Documents will be legal, valid and binding obligations of Buyer, enforceable against it in accordance with their respective terms.

5.3. <u>No Violation of Laws or Agreements</u>. The execution, delivery and performance of this Agreement and the Buyer Transaction Documents do not, and the consummation of the transactions

contemplated hereby and thereby will not, contravene any provision of the Articles of Incorporation or Bylaws of Buyer.

5.4. Consents. No consent, approval or authorization of, or registration or filing with, any Governmental Authority is required in connection with the execution, delivery and performance of this Agreement or the Buyer Transaction Documents or the consummation of the transactions contemplated hereby or thereby by Buyer.

5.5 Independent Investigation. Buyer has made its own independent investigation of the Acquired Assets and is relying solely on such independent investigation in making its decision to acquire the Acquired Assets.

5.6 Brokerage. Buyer and its Affiliates have not made any agreement or taken any other action which might cause any Person to become entitled to a broker's or finder's fee or commission as a result of the transactions contemplated hereby.

**ARTICLE VI**
**CONDITIONS TO CLOSING**

6.1. Conditions to the Obligations of the Parties. The respective obligations of each of the Parties to consummate the transactions contemplated by this Agreement shall be subject to the satisfaction of the following conditions precedent:

(a) the Trustee shall obtain an order of the Bankruptcy Court, in form and substance satisfactory to Buyer, approving this Agreement and authorizing Trustee on behalf of the Debtor's Estate to consummate all of the transactions contemplated by this Agreement (the "**Sale Order**"). The Sale Order shall provide, among other things, that:

(i) the Bankruptcy Court approves the terms and conditions of this Agreement and authorizes the parties hereto to proceed with the transactions contemplated hereby;

(ii) Buyer's right, title and interest in and to the Acquired Assets shall be free and clear of any and all liens, claims, encumbrances, rights of first refusal and other interests (including, without limitation, claims and encumbrances that purport to give to any party a right or option to effect any forfeiture, modification or termination of the Business's, St. Catherine's or Buyer's interest in the patients or the patient lists),

(iii) the delivery of the patient records and the transfer of patients to Buyer will not subject Buyer to any Liabilities whatsoever for claims against the Business, St. Catherine or any of the Debtor's predecessors or affiliates of any kind or character, whether known or unknown as of the closing date, now existing or hereafter occurring, based, in whole or in part, directly or indirectly, on any theory of law, including, without limitation, any theory of successor, vicarious or transferee liability;

(iv) all persons will be enjoined from asserting, prosecuting or otherwise pursuing any claim against Buyer to recover on any claims such person had, has or may have against (A) the Debtor, its estate, its principals, its shareholders, (B) the Business, or (C) Buyer in connection with the negotiation of or the actual transfer of the patients; (Question: cannot patients make claim for their records?)

(v) that Buyer shall be deemed to be a good faith purchaser of the Acquired Assets entitled to the protections of Section 363(m) of the Bankruptcy Code; and

(vi) that the assignment to Buyer of the Assigned Contracts is approved.

(b) there shall not (i) be in effect any statute, regulation, order, decree or judgment which makes illegal or enjoins or prevents in any respect the consummation of the transactions contemplated by this Agreement, or (ii) have been commenced, and shall be continuing, any action or proceeding by any Governmental Authority which seeks to prevent or enjoin in any respect the transactions contemplated by this Agreement; and

(c) any approvals or actions of any Governmental Authority having jurisdiction necessary lawfully to consummate the transactions contemplated hereby shall have been given or taken.

6.2. <u>Conditions to the Obligations of Trustee</u>. The obligation of Trustee to consummate the transactions contemplated by this Agreement shall be subject to the satisfaction of the following conditions precedent:

(a) Buyer shall have performed in all material respects its agreements and covenants contained in this Agreement required to be performed by it at or before the Closing;

(b) the representations and warranties of Buyer contained herein shall be true and correct on and as of the Closing Date, as though made on and as of the Closing Date (except for representations and warranties that address matters only as of a particular date which shall be true and correct as of that date); and

(c) Buyer shall have made or caused to be made delivery to Trustee the items required by Section 3.2(a).

6.3. <u>Conditions to the Obligations of Buyer</u>. The obligation of Buyer to consummate the transactions contemplated by this Agreement shall be subject to the satisfaction of the following conditions precedent:

(a) Trustee shall have performed in all material respects his agreements and covenants contained in this Agreement required to be performed by it at or before the Closing;

(b) the representations and warranties of the Trustee contained herein shall be true and correct on and as of the Closing Date, as though made on and as of the Closing Date (except for representations and warranties that address matters only as of a particular date which shall be true and correct as of that date);

(c) Trustee shall have made or caused to be made delivery to Buyer the items required by Section 3.2(b);

(d) Buyer, in its sole discretion, shall be satisfied with the form and substance of the disclosure schedules and any updated versions thereof;

(e) Buyer, in its sole discretion, shall be satisfied with the results of its due diligence investigation of the Business;

(f) there shall not have occurred any material adverse change in the business, assets, properties, results of operations or prospects of the Business;

(g) Buyer and Physician shall have entered into the Employment Agreement in a form acceptable to Buyer in its sole discretion; and

(h) Buyer and Landlord shall have entered into the Lease Agreement in a form acceptable to Buyer in its sole discretion.

- 8 -

Case 5:12-bk-02073-JJT    Doc 52-1    Filed 04/27/12    Entered 04/27/12 17:33:54    Desc
Exhibit Asset Purchase Agreement    Page 8 of 20

# ARTICLE VII
# COVENANTS; OTHER AGREEMENTS

7.1. Access. Prior to the Closing, Trustee will (i) give the Buyer and its authorized representatives, employees, consultants, counsel and accountants reasonable access to the books, records, offices and other facilities and properties of the Business during mutually agreeable business hours and (ii) furnish to the Buyer and its authorized representatives such information within the Trustee's possession concerning the business, properties, contracts, assets, liabilities, personnel and other aspects of the Business which is reasonably requested; provided, however, that any such access shall be granted at reasonable times during normal business hours. Trustee acknowledges that no investigation by Buyer or its representatives shall affect or limit the scope of the Trustee's representations and warranties herein.

7.2. Conduct of Acquired Businesses. From and after the date hereof and prior to the Closing or earlier termination of this Agreement, Trustee shall:

(a) use commercially reasonable efforts to preserve intact the Business and related relationships with patients, suppliers and other third parties having business dealings with them;

(b) not incur, create or assume any Lien with respect to any Acquired Asset other than Permitted Liens;

(c) not dispose of any of the Acquired Assets except for dispositions of inventories in the ordinary course of business consistent with past practice;

(d) not enter into any new or otherwise amend any term of, or waive any right under, any Assigned Contract outside of the ordinary course of business consistent with past practice; and

(e) not agree to take any of the foregoing actions.

7.3. Consents and Approvals.

(a) From and after the date hereof and prior to the Closing or earlier termination of this Agreement, each Party agrees to use commercially reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary for it/he to do under applicable Laws to consummate and make effective the transactions contemplated by this Agreement, including the use of its/his commercially reasonable efforts to (i) cause the satisfaction of the conditions set forth in Article VI hereof, insofar as such matters are within the reasonable control of such party, (ii) defend any lawsuits or other legal proceedings, whether judicial or administrative, challenging this Agreement or the performance of the obligations hereunder or thereunder, and (iii) execute and deliver such instruments and take such actions as the other parties hereto may reasonably require in order to carry out the intent of this Agreement.

(b) The Parties shall cooperate with one another (i) in determining whether any other action by or in respect of, or filing with, any Governmental Authority is required, or any actions, consents, approvals or waivers are required to be obtained from parties to any Assigned Contracts, in connection with the consummation of the transactions contemplated by this Agreement, and (ii) in taking such actions or making any such filings, in furnishing such information as may be required in connection therewith, and in seeking timely to obtain any such actions, consents, approvals or waivers.

(c) Each Party shall keep the other reasonably apprised of the status of matters relating to the completion of the transactions contemplated hereby and work cooperatively in connection with obtaining all required approvals or consents of any Governmental Authority. In that regard, each party shall without limitation (to the extent permitted by applicable Law): (i) promptly notify the other of, and if in writing, furnish the other with copies of (or, in the case of material oral communications, advise the other orally of) any

communications from or with any Governmental Authority with respect to the transactions contemplated by this Agreement, and (ii) permit the other to review and discuss in advance, and consider in good faith the views of the other in connection with, any proposed written (or any material proposed oral) communication with any such Governmental Authority.

      7.4.    Employees; Continuity of Care.

      (a)    Buyer intends to evaluate the need for each of the non-physician employees of the Business and offer employment to a majority, if not all, of the staff; provided, however, that Buyer shall not be obligated to offer initial employment to any specific members of the non-physician employees of the Business. Buyer retains whatever right it may have to terminate any non-physician employee who accepts Buyer's offer of employment or to vary the terms of his or her employment. Trustee shall use his best efforts to facilitate acceptance of Buyer's offer of employment by those non-physician employees of the Trustee to whom Buyer makes such offer.

      (b)    At the Closing, Trustee shall deliver to Buyer all patient billing records and all medical and patient records, reports, studies and supporting documentation relating the Business. Buyer and Trustee shall cooperate in notifying patients and third party payors of the Business of the change in the ownership of the Acquired Assets. Upon execution of this Agreement, the Parties shall request that Physician mail to patients of the Business the form letter set forth on Exhibit C and to applicable third party payors of the Business the form letter set forth on Exhibit D. Trustee and Buyer mutually agree that after the date hereof, and following the Closing Date, the parties shall cooperate fully with one another to ensure the continuity of care to all patients of the Business.

## ARTICLE VIII
## MISCELLANEOUS

      8.1.    Assignment. This Agreement and the rights hereunder shall not be assignable or transferable by either Party (including by sale of partnership interests, operation of law in connection with a merger, or sale of substantially all the assets of a party) without the prior written consent of the other Party hereto, except that Buyer may assign its rights hereunder to an affiliate of Buyer without the consent of Trustee. This Agreement shall inure to the benefit of, and be binding upon and enforceable against, the successors and permitted assigns of the respective Parties hereto.

      8.2.    No Third-Party Beneficiaries. This Agreement is for the sole benefit of the Parties hereto and their permitted assigns and nothing herein expressed or implied shall give or be construed to give to any person or entity, other than the parties hereto and such assigns, any legal or equitable rights hereunder.

      8.3.    Termination.

      (a)    This Agreement may be terminated by written notice given by Trustee to Buyer or by Buyer to Trustee (i) if the Closing shall not have occurred on or before ninety (90) days after the date hereof (unless the failure to consummate the transactions contemplated herein is attributable to a failure on the part of the party seeking to terminate this Agreement to perform any material obligation required to be performed by such party at or prior to the Closing); or (ii) if (A) the transactions contemplated hereby shall violate any non-appealable final order, decree or judgment of any Governmental Authority having competent jurisdiction or (B) there shall be a statute, rule or regulation which makes the transactions contemplated hereby illegal or otherwise prohibited.

      (b)    In the event of termination by Buyer or Trustee pursuant to paragraph (a) of this Section 8.3, written notice thereof shall forthwith be given to the other party and the transactions contemplated by this Agreement shall be terminated, without further action by either.

(c) Nothing in this Section 8.3 shall be deemed to release a party from liability for any willful breach of this Agreement prior to termination hereof.

8.4. <u>Survival of Representations, Warranties and Covenants</u>. The representations, warranties and covenants of the Parties set forth herein shall survive the consummation of the transactions contemplated herein. No such representation or warranty shall be deemed waived, affected or impaired by any investigation made by either Party.

8.5. <u>Expenses</u>. Whether or not the transactions contemplated hereby are consummated, all costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the Party incurring such costs or expenses, except as may otherwise be expressly provided in this Agreement.

8.6. <u>Amendments</u>. No amendment to or modification of this Agreement shall be effective unless it shall be in writing and signed by each of the Parties hereto.

8.7. <u>Notices</u>. All notices required to be given under this Agreement shall be given by personal delivery or by certified mail or registered mail, return receipt requested addressed as follows (or, with respect to a Party, to such other address as communicated by such Party to the others pursuant to this notice procedure):

>   If to Buyer, to:
>
>   St. Luke's Physician Group, Inc.
>   801 Ostrum Street
>   Bethlehem, PA 18015
>   Attn: President
>
>   If to Trustee, to:
>
>   William G. Schwab & Associates
>   811 Blakeslee Blvd. Dr. East
>   P.O. Box 56
>   Lehighton, PA  18235

Notices shall be effective upon actual receipt if given by personal delivery or three (3) days after mailing if mailed.

8.8. <u>Governing Law</u>. This Agreement shall be deemed to have been made and shall be construed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania and the Bankruptcy Code.

8.9. <u>Severability</u>. If any provision of this Agreement or the application of any such provision to any person or circumstance shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision hereof.

8.10. <u>Interpretation</u>. All references to immediately available funds or dollar amounts contained in this Agreement shall mean United States dollars. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. The parties acknowledge and agree that the normal rule of construction, to the effect that any ambiguities are resolved against the drafting party, shall not be employed in the interpretation of it, and the terms and provisions of this Agreement shall be constructed fairly as to all parties hereto and not in favor of or against any party, regardless of which party was generally responsible for the preparation of this Agreement.

8.11. <u>Waiver</u>. Waiver of any term or condition of this Agreement by either party shall be effective if in writing and shall not be construed as a waiver of any subsequent breach or failure of the same term or

- 11 -

Case 5:12-bk-02073-JJT    Doc 52-1    Filed 04/27/12    Entered 04/27/12 17:33:54    Desc
Exhibit Asset Purchase Agreement    Page 11 of 20

condition, or a waiver of any other term of this Agreement. No failure or delay by either party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

8.12. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, all of which shall be considered one and the same agreement, and shall become effective when one or more such counterparts have been signed by each party and delivered to the other party.

8.13. <u>Entire Agreement</u>. This Agreement, including the Schedules and Exhibits hereto, contain the entire agreement and understanding between the parties hereto and their affiliates with respect to the subject matter hereof and supersede all prior and contemporaneous agreements, negotiations, correspondence, undertakings and understandings, oral or written, relating to such subject matter.

8.14. <u>Construction</u>. All the terms and words used in this Agreement, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, any other gender, masculine, feminine or neuter, as the context or sense of this Agreement or any paragraph or clause herein may require, the same as if such words had been fully and properly written in the required number and gender.

IN WITNESS WHEREOF, the Parties have executed or caused this Agreement to be executed as of the date first written above.

ST. LUKE'S PHYSICIAN GROUP, INC.


By:_____
Name: Dean W. Evans
Title: President



_____
William G. Schwab, Esq., Chapter 7 Trustee
of the Bankruptcy Estate of Saint Catherine
Hospital of Pennsyvlania, LLC

- 12 -

Case 5:12-bk-02073-JJT    Doc 52-1    Filed 04/27/12    Entered 04/27/12 17:33:54    Desc
Exhibit Asset Purchase Agreement    Page 12 of 20

# EXHIBITS AND DISCLOSURE SCHEDULES

## Exhibits

| Exhibit | Title |
|---|---|
| Exhibit A | Bill of Sale |
| Exhibit B | Assignment and Assumption |
| Exhibit C | Letter to Patients |
| Exhibit D | Letter to Third Party Payors |

## Disclosure Schedules

| Schedule | Title |
|---|---|
| Schedule 2.1(g) | Assigned Contracts |

## Schedule 2.1(g)

## Assigned Contracts

1. Employment Agreement between Saint Catherine Medical Group, LLC and Gregory C. Dobash, M.D.

2. Lease Agreement between Saint Catherine Medical Group, LLC and Northern Valley Medical Center, Inc.

# EXHIBIT A

## BILL OF SALE

THIS BILL OF SALE, dated as of April __, 2012 ("**Bill of Sale**"), is by and among WILLIAM G. SCHWAB, ESQ. ("**Trustee**"), an individual acting solely in his capacity as the trustee of the bankruptcy estate of Saint Catherine Hospital of Pennsylvania, LCC, a Delaware limited liability company (the "**Debtor**"), and ST. LUKE'S PHYSICIAN GROUP, INC. ("**Buyer**"), a Pennsylvania not-for-profit corporation.

### WITNESSETH:

WHEREAS, Buyer is a non-profit corporation formed for the purpose of providing physician services to patients and providing professional and administrative services to St. Luke's Health Network, Inc. d/b/a St. Luke's University Health Network and its affiliated hospitals;

WHEREAS, Debtor, through its wholly owned subsidiary, Saint Catherine Medical Group, LLC, a Delaware limited liability company, has been engaged in the practice of Family Medicine (referred to as the "**Business**") at offices presently located at 411 Shenandoah Road, Ringtown, Pennsylvania 17976;

WHEREAS, on April 9, 2012, Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Middle District of Pennsylvania to Docket No. _____ (the "**Bankruptcy Case**" and the "**Bankruptcy Court**");

WHEREAS, on April __, 2012, the Trustee was appointed as the trustee in Bankruptcy Case for the aforementioned filing by the Bankruptcy Court. The Bankruptcy Case has since converted to Chapter 7, and the Trustee continues serve as the Trustee.

WHEREAS, pursuant to the Bankruptcy Code, the Trustee now has legal title to and the sole authority to administer and sell Debtor's assets, including those of the Subsidiary, by operation of law pursuant to the Bankruptcy Code;

WHEREAS, subject to the approval of the Bankruptcy Court, Trustee desires to sell, and Buyer desires to purchase, certain assets of St. Catherine relating to the Business, upon the terms and conditions set forth in this Agreement;

WHEREAS, pursuant to that certain Asset Purchase Agreement, dated as of April __, 2012 (the "**Asset Purchase Agreement**"), by and among the Buyer and the Trustee, Trustee agreed to sell to Buyer and Buyer agreed to purchase from the Trustee certain of the assets of the Business; and

WHEREAS, this Bill of Sale is entered into between Buyer and Trustee pursuant to Section 3.2(b)(i) of the Asset Purchase Agreement.

### TERMS

NOW, THEREFORE, in consideration of the foregoing representations and of the mutual covenants and promises made in this Bill of Sale and the Asset Purchase Agreement and for other valuable consideration (the receipt and sufficiency of which are hereby acknowledged), and with the intent to be legally bound hereby, the Trustee and Buyer hereby agree as follows:

1. Definitions.

Capitalized terms used herein shall have the meanings ascribed thereto in the Asset Purchase Agreement.

2. Transfer.

(a) The Trustee hereby sells, conveys, assigns, transfers and delivers to Buyer, free and clear of all Liens, and Buyer hereby purchases, acquires and accepts from the Trustee, all right, title and interest in and to the Acquired Assets. No rights, properties or assets shall be included in the Acquired Assets except to the extent specified in the Asset Purchase Agreement.

(b) Trustee covenants and agrees that he will at any time and from time to time do, execute, acknowledge and deliver any and all other acts, deeds, assignments, transfers, conveyances, powers of attorney or other instruments that Buyer reasonably deems necessary or proper to carry out the conveyance intended to be made hereunder.

3. Miscellaneous.

(a) This Bill of Sale shall be binding upon and inure to the benefit of Trustee and Buyer and their successors and assigns.

(b) This Bill of Sale shall be subject to the representations, warranties, covenants and other terms and conditions of the Asset Purchase Agreement, which is incorporated by reference herein. In the event of any conflict or inconsistency in the terms of this Bill of Sale and the Asset Purchase Agreement, the Asset Purchase Agreement shall in all cases govern and control.

IN WITNESS WHEREOF, the foregoing parties have signed their names, with the intent to be legally bound hereby, on the date first written above.

ST. LUKE'S PHYSICIAN GROUP, INC.

By:_____
Name: Dean W. Evans
Title: President


_____
William G. Schwab, Esq., Trustee

- 2 -

Case 5:12-bk-02073-JJT    Doc 52-1    Filed 04/27/12    Entered 04/27/12 17:33:54    Desc
Exhibit Asset Purchase Agreement    Page 16 of 20

# EXHIBIT B

## ASSIGNMENT AND ASSUMPTION

THIS ASSIGNMENT AND ASSUMPTION, dated as of April __, 2012 ("**Assignment**"), is by and among WILLIAM G. SCHWAB, ESQ. ("**Trustee**"), an individual acting solely in his capacity as the trustee of the bankruptcy estate of Saint Catherine Hospital of Pennsylvania, LCC, a Delaware limited liability company (the "**Debtor**"), and ST. LUKE'S PHYSICIAN GROUP, INC. ("**Buyer**"), a Pennsylvania not-for-profit corporation.

### WITNESSETH:

WHEREAS, Buyer is a non-profit corporation formed for the purpose of providing physician services to patients and providing professional and administrative services to St. Luke's Health Network, Inc. d/b/a St. Luke's University Health Network and its affiliated hospitals;

WHEREAS, Debtor, through its wholly owned subsidiary, Saint Catherine Medical Group, LLC, a Delaware limited liability company, has been engaged in the practice of Family Medicine (referred to as the "Business") at offices presently located at 411 Shenandoah Road, Ringtown, Pennsylvania 17976;

WHEREAS, on April 9, 2012, Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Middle District of Pennsylvania to Docket No. _____ (the "**Bankruptcy Case**" and the "**Bankruptcy Court**");

WHEREAS, on April __, 2012, the Trustee was appointed as the trustee in Bankruptcy Case for the aforementioned filing by the Bankruptcy Court. The Bankruptcy Case has since converted to Chapter 7, and the Trustee continues serve as the Trustee.

WHEREAS, pursuant to the Bankruptcy Code, the Trustee now has legal title to and the sole authority to administer and sell Debtor's assets, including those of the Subsidiary, by operation of law pursuant to the Bankruptcy Code;

WHEREAS, subject to the approval of the Bankruptcy Court, Trustee desires to sell, and Buyer desires to purchase, certain assets of St. Catherine relating to the Business, upon the terms and conditions set forth in this Agreement;

WHEREAS, pursuant to that certain Asset Purchase Agreement, dated as of April __, 2012 (the "**Asset Purchase Agreement**"), by and among the Buyer and the Trustee, Trustee agreed to sell to Buyer and Buyer agreed to purchase from the Trustee certain of the assets of the Business; and

WHEREAS, this Assignment is entered into between Buyer and Trustee pursuant to Section 3.2(b)(ii) of the Asset Purchase Agreement.

### TERMS

NOW, THEREFORE, in consideration of the foregoing representations and of the mutual covenants and promises made in this Assignment and the Asset Purchase Agreement and for other valuable consideration (the receipt and sufficiency of which are hereby acknowledged), and with the intent to be legally bound hereby, the Trustee and Buyer hereby agree as follows:

1. <u>Definitions</u>.

Capitalized terms used herein shall have the meanings ascribed thereto in the Asset Purchase Agreement.

2. <u>Assignment and Assumption</u>.

(a) Trustee hereby assigns and delivers to Buyer all assignable rights, title, obligations and interests in and to the Assigned Contracts.

(b) Buyer does hereby assume and agree to perform any and all obligations under the Assigned Contracts pursuant to the terms of the Asset Purchase Agreement.

3. <u>Miscellaneous</u>.

(a) This Assignment shall be binding upon and inure to the benefit of Trustee and Buyer and their successors and assigns.

(b) This Assignment shall be subject to the representations, warranties, covenants and other terms and conditions of the Asset Purchase Agreement, which is incorporated by reference herein. In the event of any conflict or inconsistency in the terms of this Assignment and the Asset Purchase Agreement, the Asset Purchase Agreement shall in all cases govern and control.

IN WITNESS WHEREOF, the foregoing parties have signed their names, with the intent to be legally bound hereby, on the date first written above.

ST. LUKE'S PHYSICIAN GROUP, INC.

By: _____
Name: Dean W. Evans
Title: President


_____
William G. Schwab, Esq., Trustee

- 2 -

**EXHIBIT C**

**NOTICE TO PATIENTS**

Dear [Patient]:

This letter is to inform you that, as of April __, 2012, ST. LUKE'S PHYSICIAN GROUP, INC. ("SLPG") acquired Ringtown Northern Valley Medical Center and my medical practice. Although SLPG acquired the medical practice, I will continue to provide professional services to you at my current location. I will provide these services as an employee of SLPG.

As part of this acquisition, your medical and related records will be transferred to SLPG. Unless you notify me to the contrary, I will assume that you consent to the transfer of your records and that you also consent to continue receiving treatment as my patient. However, if you wish to use the services of another physician, at your written request, copies of your medical and related records will be sent to the physician that you specify.

I look forward to continuing to serve as your physician. If you have any questions, please do not hesitate to call me at _____.

Sincerely,


Gregory C. Dobash, M.D.

1

# EXHIBIT D

## NOTICE TO THIRD PARTY PAYORS

Dear_____:

This letter is to notify you that, as of April __, 2012, ST. LUKE'S PHYSICIAN GROUP, INC. ("SLPG") will acquire my medical practice. I will continue to provide services to patients at my current locations as an employee of SLPG.

My current provider number is as follows:

    Gregory C. Dobash, M.D.                     _____

Please provide me with any necessary forms or applications to enable me to assign to SLPG (provider number_____) the right to bill and receive payment for my services provided after April ___, 2012. For my services rendered prior to such date, checks should continue to be made payable to Saint Catherine Medical Group, LLC.

Thank you for your assistance.

Sincerely,


Gregory C. Dobash, M.D.

1